The Fourth District of Public Court of the State of Illinois has now convened. The Honorable James A. Kinect presiding. This is our case number 4-21-0700. People of the State of Illinois v. Bradley Webster Simmons. Would counsel for the appellant please state your name? Ross Allen. Thank you. And for the appellee? Luke McNeil. Mr. Allen, you may proceed. May it please the court. Ross Allen from the Office of the State Appellate Defender. Representing appellant Bradley Webster Simmons. First, I plan to discuss whether Simmons' appeal of the trial court's finding of unfitness must be found untimely. Upon review, I would like to concede that the judgment, I would like to concede that the appeal as to those issues, the second and third in Simmons' brief, is untimely here. If Mr. Simmons would like to challenge that judgment, he should seek a supervisory order from the Illinois Supreme Court. Second, I will discuss the state's failure to present sufficient evidence to prove Mr. Simmons not not guilty. The state only showed that Simmons was near the crime scene 80 to 90 minutes after the underlying incident, and then he briefly fled after seeing police. Contrary to the state's argument, Detective Hanner did not identify Simmons as the armed man in the road. Hanner testified that he saw Simmons after police detained him, but Hanner could not positively identify Simmons as the armed man. He could not even tell the man in the road's race. The only descriptor, the only descriptor that matched was that he was a man. Hanner also described the man as a larger built and wearing dark clothing, but there was no testimony that he was larger built and no testimony that he wore dark clothing. Additionally, Simmons did not match the description given by the Brandon police that the man fleeing east wore a camouflage top. Therefore, the police failure to find a camouflage top nearby suggests that Simmons was not the man in the road that Hanner saw, and that, and the man Hanner saw escape the area before being spotted by police. People v. Dowell-Libby is instructive. Dowell-Libby makes clear that in, that in order to prove Simmons guilty based on his proximity to the crime, the state needed to show that no one else had an opportunity to commit the crime. That means looking at who had an opportunity to be the person in the road 80 to 90 minutes prior to Simmons's detention. That vast amount of time greatly increases the number of people who could have been that person armed in the road. The state's argument that there was no testimony about any other individual near the alleged fight path is misguided and burden shifting. The state needed to show that no one else could have done it. Notably, there was no testimony that this large area was devoid of anyone else, or when and how the police established a perimeter. Hanner and Deputy Simmons testified that the police forces generally set up a perimeter, but there was no testimony as to when the perimeter was established, the size of it, what area it enclosed, if any at all, how many officers consisted of the perimeter, which would indicate its porousness, which would show whether or not somebody would be able to exit the perimeter without being seen. There's also no testimony as to what was inside it, like inhabited buildings. All of this shows that it was possible for the man in the road to flee in that 80 to 90 minute timeframe. Notably, in Dawa Libby, the appellate court reversed rejecting the state's reliance on a doubtful, vague, and unreliable identification testimony, which is exactly what the state presented here. No witnesses could place Simmons with any of the items, the rifle case, the backpack, or even the camo shirt. No one saw him throwing them away, and if you look at the map, the location of the gun, case, and backpack was close to Brandt and Martin Sullivan, suggesting someone there should have seen the person discard those items. There was no evidence that Simmons ran in the line where the items were deposited or was ever in any of those locations. There was no identification of Simmons by either Brandt, Martin Sullivan, or Union Pacific employees at the discharge hearing. There was no forensic testing of the backpack or the rifle bag that was recovered. Simmons even responded when stopped by police, why are you guys chasing me? I am just going for a walk. Any number of people could have been the armed man in the road or been near the gun and the backpack during that time period. The state's evidence that Simmons was in the general area of a crime 80 to 90 minutes after it was committed is just not enough. Counsel, may I ask you a question in regards to the evidence? Was there any evidence establishing if there were any other individuals that the police found within the perimeter that they had established? There was no evidence that police found anyone else in that area, no, in that perimeter. There was also no evidence that there wasn't anyone in that area. It was just simply a lack of evidence in this case. Would you agree that just in terms of the photographs that were admitted in evidence that this area that was identified as the search area or perimeter area, it didn't have, it wasn't a residential area, there weren't homes there. It looked to be more open grassy fields and with a couple of businesses in the area. Yeah, so there were no homes. It was a agricultural factory. And then east of that was a water treatment plant. And then south of that was a, or south of the agricultural factory was a tractor dealership. And then east of that was fields. Generally, yes. And yeah, and it was a large, large area. Suggestions regarding why defendant was in that area, separate and apart from what he was being accused of. There is no evidence as to why defendant was in that area. I mean, all that, you know, all that we know is that when he was stopped, he responded that he was going for a walk. But again, it is the state's burden. They have to show that he possessed that firearm and that firearm ammunition, which was in the backpack. And based on the evidence that they presented, they did not do that because Hannah did not identify Simmons as a man in the road. He couldn't even tell the man's race who was in the road. And then 80 to 90 minutes. I mean, anybody could have, you know, walked into that area from the north, the south or the east. Couldn't really come from the west because of the road and where the police were coming from. But any number of people could have been in that area. And it was the state's burden to show that. And he was just simply nearby these items. But they again never showed him to have possessed them, never showed it, never even saw him discarding them or discarding some unknown objects. He was just simply, you know, going for a walk when, you know, 13 officers, you know, came at him and asked him to stop. Is it true that the items that were recovered, the rifle, the rifle case and the backpack were located essentially in line with where Hannah had identified or had observed the individual on the roadway. And then where defendant was subsequently found by police. So, Hannah described the man in the in the roadway as fleeing east. The, the gun and or the gun bag which included the gun and the backpack were found southeast of where Hannah saw the man in the roadway. It also is not a street is not a straight is not a straight line, according to the numbers on that map. There's definitely, you know, some slight zigs and zags. He was in the general area of these items, but he was by no means close or within, you know, any kind of arm's length or, you know, short jog or run to it. And so, you know, the, the state especially in at the discharge hearing stress that that straight line. But if you look at the numbers, you know, two and three seem to be kind of three seems to be directly south of two, and then, you know, four and five kind of jog more to the south, southeast. I also think it's important to stress that, you know, the armed man in the road fled directly east at first, and in order to be going to, to where the gun and the backpack were discarded, you would then have to again kind of zig a bit to the, to the south. So, how much is a bit you said he would have had to gone a bit to the south but what do you mean by that several hundred yards or several hundred feet or. So, there is, there was testimony that the right one the backpacker found 50 to 75 yards apart. Again, there was not much testimony as to the exact distances between the items. There was testimony that that Simmons was was first seen by Detective King several hundred yards east of the Martin Sullivan. But I mean, overall, it's just looking at the map, you know, it was, you know, to answer the earlier question, it was not a straight, it was not a straight line. It was a broken line and, you know, but I mean, even if it was a straight, you know, even if it was a straight line, it doesn't establish that the, that the state presented sufficient evidence to show that. Mr Simmons possess the gun possess the backpack, because, and you know, any number of people could have discarded that gun could have discarded that backpack during that at to nine 90 minutes and gotten away. During that at or 90 minutes Is there any evidence says to any other pedestrians being in the area. There was no other. There was evidence that there were people at the brand agricultural factory and at the Martin Sullivan. Tractor dealership. There's not a specific number of people but they, you know, were in contact with with police, but as to any one other than that, there was no evidence that that anyone was in the area, but again, there was also no evidence that no one was in the area, it was the state, essentially, failing to present sufficient evidence and in essentially making sure that no one else had the to show that no one else had the opportunity to commit this crime. They did not establish what the perimeter consisted of. There was no evidence that it was a secure perimeter, it was there was no evidence when it was established so the arm band in the road could could have gotten away. Before it was set up. It was not established what it entirely enclosed it did they, you know, did not, you know, again, show how many officers made up that made up that perimeter. There is definitely that there were 13 or more officers in the area but even then we don't really know how many officers were involved here we don't know if the perimeter included in habited buildings like in the grant a plant, or in the Martin Sullivan dealership. And again, it, it shows that it was possible for the man in the roadway to flee in that 80 to 90 minute timeframe. And therefore, the state did not present sufficient evidence to meet their burden here. These officers that made up the perimeter, were they in squad cars, were they on foot. Were they at the businesses I mean where can you be any more specific as to where they were. I can't because the testimony is lacking, essentially two officers testified that a perimeter was set up. I can say that of the testimony, there was one officer justified that there were 10 plus officers in uniform, who stopped Simmons, and three officers, not in uniform, who participated in stopping Simmons. And there were squad cars used because King who is the police officer that that detained Simmons briefly rode in a squad car from a different police force, but that is the full extent of the evidence that the state presented, you know, we don't know if they were able to secure the east, where there is a large field, we don't know if they were able to to secure these, you know, the south near Martin Sullivan. We don't know if they were able to secure the north, if the armed man in the road flood north of the water treatment plant. The state's evidence essentially leaves too many questions open to find based upon this evidence that that Simmons committed this crime. Thank you. If there are no further questions. I would just like to finish that because the state failed to present sufficient evidence to prove Mr Simmons not not guilty. This court should reverse the circuit courts finding of not not guilty and enter on on acquittal on all three counts. Thank you. Thank you counsel, Mr McNeil. I may please the court counsel. As for the 104 16 he issued that this court asked us to look at respondent and counsel conceded. I apologize to the court for not recognizing this at the briefing stage. But of course forfeiture is only a bar on the parties and not on this court, and due to the obvious untimeliness here. I think it's an easy decision for this court to make. Moving on to the sufficiency of the evidence argument. Even though this was a discharge hearing the standard of review remains the same and that standard of review is a high one. That means this court looks at all the evidence and allows all reasonable inferences in the light most favorable the state, whether that evidence be direct or circumstantial and determines whether any rational trier fact could have found respondent not not guilty beyond a reasonable doubt. What's the burden on the trial court. What is the sufficiency. They're looking beyond I think they're looking beyond a reasonable doubt for in a discharge hearing like this, of not not guilty. Okay, thank you. I'm keeping in mind that respondent concedes in his brief that there was sufficient evidence to prove the man in the road guilty of these charges. The only issue is whether respondent was the man in the road. I would submit that the only reasonable inference to make. Based on everyone's testimony specifically Deputy Hannah's is that respondent was the man in the road. Deputy Hannah initially observed the man in the road and proceeded to set up a perimeter. It's true that this was a bare bones examination of all the witnesses including Deputy Hannah, but there was a perimeter set up, there's nothing in the record that suggests anyone was found besides respondent, and as, as Justice Harris pointed out this was not a residential area this is not a place where people go for a routine walk. So, respondents absurdity to being apprehended by police, just adds to the adds to the circumstantial evidence of his of his guilt here. But responder was asked, or Hannah was asked, did you see the subject after he was captured and or answered I did. Now, do I wish that they would have asked the next obvious question to confirm that by quote the subject they were referring to the person Hannah saw earlier in the road yes, of course it would have been great to leave to connect the dots completely and leave absolutely no doubt, but still the only person. The prosecutor could have been referring to when he asked Hannah Did you see the subject after he was captured was the man in the road that Hannah saw earlier, and this is especially true when we allow all reasonable inferences and look at this evidence in the light most favorable to the state. As far as the flight path there was testimony describing respondents flight path, and that the items found including the backpack and the rifle case were found in that flight path, I, from my reading interpretation of the, of the numbers, it was kind of confusing but it seems like a pretty logical path for someone who's trying to elude police to go on in that in that section and of course he was finally apprehended in a, in a, in a field, which by itself and he ran from the police as soon as he saw them there too. There were some initial reports from people at the brand ag facility that the man on the train was wearing a camouflage shirt and respond it was found wearing a plaid shirt, the trial court mentioned this and said well he was shedding all kinds of other stuff. Presumably he could have shed this jacket or shirt. In the meantime, as well, I would say that there's also another possibility. And that's the plaid and camouflage are both pretty busy patterns and if he was seen from far away as possible that the original report was incorrect, that the person who reported it Mr. Plaid for camouflage. And that's, again, another reasonable inference to make. Like I said this was a bare bones examination, but the sufficiency of the evidence standard of review, I think is met by the by the evidence presented here, specifically handers testimony and specifically when we allow reasonable inferences the light most favorable in the state. I won't comment on the merits of the unfitness arguments unless this court has specific questions. With Mr. McNeil. How large was the perimeter. Opposing counsel seem to indicate that the record doesn't reflect that. Do we have some idea though, like acres. It seems to be at least a few, there's no specific numbers that are mentioned, as far as, as the area that the perimeter consists of but just judging by the Google Maps images that are in the record it seems to be an average. What, whatever the 40 acre field is or a quarter, or whatever a quarter of a mile by a quarter of a mile was bigger than that. I could not say based on the record and we don't know and I wish there were some. Well, a mile by a mile 640 acres that'd be a pretty big perimeter. Right. Yeah, I don't think that the Google image searches are a mile by a mile, and that that includes more than what the perimeter was that was established. Of course, defense counsel could have, I guess probed further about the specifics of this perimeter or about anybody else who was found in this perimeter, there were no questions. And I would say the record based as it is, there was sufficient evidence to show that the man in the road was responded. If there are no more questions I think this court. Thank you counsel, Mr Allen rebuttal. Just briefly. First, I just like to start that detective painter did not identify Simmons, as the man in the road. Hannah simply testified that he saw Simmons after police detained him, but Hannah specifically testified, he could not positively identify Simmons, as the arm man. He could not eat. He was 90 feet away and could not even tell the man in the roads race. Again, he only the only identifying descriptor that Hannah had that meets Simmons was that he was a man. And, again, because it was 80 to 90 minutes later, it is the, the, the state has come nowhere close to establishing that Mr Simmons was the man in the road, who possessed the gun, and the backpack that were later found. Also in response to counsel's argument, people can walk through fields, it is not a crime to walk through a field people do not just walk in residential areas, they have to tie. Mr Simmons to that, that, that gun, and that backpack. Again, to the plan versus the camo I do think it is very important that the grant employees also identified the man, the arm man in the road fleeing east as as wearing camo, and because of that, that, that information is an important fact that the camo that was never found. That indicates that that man on the road was able to flee from the area before the police were able to establish whatever perimeter. They established the ammunition. And then, what was it for the type of gun that was found. I believe so. Yes. And there were no fingerprints taken of anything right right there was no for no forensic evidence of either the gun. The gun bag, the backpack, or the ammunition, or any or any of the contents of the backpack which I believe also included a orange vest. Thank you. If there are no further questions. I would just end again that because the state failed to present sufficient evidence to prove Mr Simmons, not not guilty. This court should reverse the circuit courts finding of not not guilty and enter on acquittal of all three counts. Thank you. Thank you, gentlemen. We'll take the matter under advisement. Thank you for your arguments.